## CALIFORNIA PRUNE & APRICOT GROWERS' ASS'N v. CATZ AMERICAN CO.

No. 6615.

Circuit Court of Appeals, Ninth Circuit.

Aug. 10, 1932.

Milton D. Sapiro, of San Francisco, Cal., for appellant.

Norman A. Eisner, of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

In its petition filed in the United States District Court for the Northern District of California, the appellee, Catz American Company, Inc., a New York corporation, alleges that on October 21, 1927, it entered into a contract in writing with appellant, California Prune & Apricot Growers' Association, a California corporation, wherein the Catz Company was to purchase from the association the latter's entire stock of 1926 California prunes; that said contract provides that any disputes arising under the said agreement be settled by arbitration before the Dried Fruit Association of California; that certain disputes therein mentioned have arisen between petitioner and the said association under said agreement.

The petition concludes with a prayer that an order be made by said District Court directing the said association to proceed to arbitrate in accordance with the terms of said agreement.

After hearing, and over the objection of appellant, an order and decree was entered by said court directing the parties to proceed with the arbitration in accordance with the terms of said written agreement, and it is from this order that the appellant has appealed to this court.

The appellee invoked the jurisdiction of the District Court upon the ground of the diversity of citizenship. Although there are other matters discussed in counsel's briefs, the primary question before this court is whether or not the District Court had jurisdiction to compel the parties to arbitrate the controversy herein involved in accordance with the California State Arbitration Act, title 10, part 3, of the California Code of Civil Procedure, the pertinent sections of which are as follows:

"§ 1282. *Preliminary procedure.* A party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration may petition any superior court of the county or city and county where either party resides, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of the hearing of such application shall be served personally upon the party in default. The court shall hear the parties, and upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement or the default be in issue an order shall be made directing a summary trial thereof. Where such an issue is raised, the party alleged to be in default, may, on or before the return day of the notice of application, demand a jury trial of such issue, and if such demand be made, said court shall make an order referring the issue or issues to a jury called and impaneled in the manner provided for the trial of actions at law. If no jury trial be demanded said court shall hear and determine such issue. If the finding be that no agreement in writing providing for arbitration was made, or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the finding be that a written provision for arbitration was made and there is a default in proceeding thereunder, an order shall be made summarily directing the parties to proceed with the arbitration in accordance with the terms thereof. * * *

"§ 1284. *Stay of civil action.* If any suit or proceeding be brought upon any issue arising out of an agreement providing for the arbitration thereof, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall stay the action until an arbitration has

been had in accordance with the terms of the agreement; provided, that the applicant for the stay is not in default in proceeding with such arbitration."

The appellant contends that said act is limited to granting authority to the Superior Court of the State of California to direct arbitration and that the federal court has no jurisdiction to grant relief under said act; that the provisions of the act themselves show that it is limited to petitions for arbitration brought in the state courts; that the state Legislature of California was without authority to confer jurisdiction upon the federal courts to enforce arbitration provisions in contracts or agreements; in other words, that the act creates no substantive right, but merely gives a new remedy, or "is intended to create a new procedural device."

The appellee, on the other hand, contends that it had the right to resort to the federal court by reason of diversity of citizenship; that the said court is capable of giving the same relief to which it would be entitled in the state court; and that the act gives "a substantive right, as well as supplies the remedy for enforcing it."

▉▉ It thus appears that the question to be determined is one of jurisdiction.

The act itself discloses that it was the intention of the Legislature to provide a procedure peculiarly adaptable to the state courts of California; and, in view of many of the provisions of the act, it would be difficult if not impossible to harmonize it with the federal law and procedure.

But aside from these difficulties, there is the further fundamental question to be considered, namely, that of the jurisdiction of the District Court to direct an arbitration under the state law.

"Arbitration" is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow.

The cause of action and the right to prosecute it, whether in the federal or the state courts, grew out of the written contract of purchase and sale, and not out of the agreement for arbitration. The latter was merely a method of procedure adopted by the parties for the settlement of controversies arising thereunder, without litigation.

The arbitration agreement was a valid contract under the state law, and enforceable under that law in the state court. "The question is one of remedy, and not of right."

▉ It is undoubtedly true that a federal court in proper cases may enforce state laws; but this principle is applicable only when the state legislation invoked, creates or establishes a substantive or general right.

The rights of the parties herein, we repeat, grew out of the contract for the purchase and sale of the property described therein, and not out of the agreement to arbitrate. The latter merely substitutes for a court action the remedy and procedure prescribed in the Arbitration Act, for the enforcement of those rights. It substitutes a special tribunal for the court.

The law that controls in the matter of the remedy is the law of the forum, and no other. The federal courts are without jurisdiction or power to enforce a purely remedial or procedural state law.

In Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 644, 20 S. Ct. 824, 827, 44 L. Ed. 921, the Supreme Court quoted with approval Bouvier's definition of a "remedy" as "the means employed to enforce a right, or redress an injury." And in Chelentis v. Luckenbach Steamship Company, Incorporated, 247 U. S. 372, 379, 384, 38 S. Ct. 501, 504, 62 L. Ed. 1171, the court, after having observed that "the only difference between a proceeding in one court or the other would be that the remedy would be regulated by the lex fori," said: "The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury. Bouvier's Law Dictionary."

If it be argued that the Conformity Act (28 USCA § 724) provides that "the practice, pleadings, and forms and modes of proceeding in civil causes" shall conform to those of the state courts, the answer is that "equity and admiralty causes" are specifically excepted from the provisions of such act.

And this is in the nature of an equity suit, in that it seeks specific performance. Indeed, the Supreme Court of the United States has held that the purpose of an Arbitration Law of this kind is "to make specific performance compellable." Red Cross Line Case, infra, at page 119, of 264 U. S., 44 S. Ct. 274, 275, 68 L. Ed. 582, citing the Berkovitz Case, infra, 230 N. Y. 261, 269, 130 N. E. 288.

▉ Nor is the Rules of Decisions Act (28 USCA § 725) applicable, for that statute refers to substantive law, not "procedure in the

federal courts." McBride et al. v. Neal (C. C. A. 7) 214 F. 966, 969.

A change in the form of remedies by the express agreement of the parties is vastly different from a substantive right created by statute. In the instant case, the wrong, if any, to be redressed was the alleged failure of the appellant to pay the appellee the sum of $16,470.98 and interest, by reason of charges said to have been improperly made and money claimed to have been improperly collected under the contract for the purchase of the prune crop. This alleged wrong was one for which the court afforded an ample remedy. All that the act has done is to add another remedy.

In Pusey & Jones Company v. Hanssen, 261 U. S. 491, 497–498, 499, 500, 43 S. Ct. 454, 456, 67 L. Ed. 763, the court said:

"That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. Scott v. Neely, 140 U. S. 106, 11 S. Ct. 712, 35 L. Ed. 358; Cates v. Allen, 149 U. S. 451, 13 S. Ct. 883, 977, 37 L. Ed. 804. Nor can it be so narrowed. Mississippi Mills v. Cohn, 150 U. S. 202, 14 S. Ct. 75, 37 L. Ed. 1052; Guffey v. Smith, 237 U. S. 101, 114, 35 S. Ct. 526, 59 L. Ed. 856. The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in a state court. Hanssen's contention is that the statute does not enlarge the equitable jurisdiction or remedies, and that it confers upon creditors of a Delaware corporation, if the company is insolvent, a substantive equitable right to have a receiver appointed. If this were true the right conferred could be enforced in the federal courts (Scott v. Neely, 140 U. S. 106, 109, 11 S. Ct. 712, 35 L. Ed. 358), since the proceeding is in pleading and practice conformable to those commonly entertained by a court of equity. But it is not true that this statute confers upon the creditor a substantive right. * * *

"Insolvency is made a condition of the Chancellor's jurisdiction; but it does not give rise to any substantive right in the creditor. Jones v. Maxwell Motor Co., 13 Del. Ch. 76, 115 A. 312, 314, 315. It makes possible a new remedy because it confers upon the Chancellor a new power. Whether that power is visitorial (as the appellant insists), or whether it is strictly judicial, need not be determined in this case. Whatever its exact nature, the power enables the Chancellor to afford a remedy which theretofore would not have been open to an unsecured simple contract creditor. But because that which the statute confers is merely a remedy, the statute cannot affect proceedings in the federal court sitting in equity.

"The case is wholly unlike Louisville & Nashville R. R. Co. v. Western Union Telegraph Co., 234 U. S. 369, 34 S. Ct. 810, 58 L. Ed. 1356, and other cases in which federal courts, because of a state statute, entertained suits to remove a cloud upon title, which otherwise must have been dismissed. In those cases, as pointed out in Clark v. Smith, 13 Pet. 195, 203, 10 L. Ed. 123, the statute changed a rule of substantive law. * * * But where a state statute relating to clouds upon title is held merely to enlarge the equitable remedy, it will not support a bill in equity in the federal court. Thus, in Whitehead v. Shattuck, 138 U. S. 146, 11 S. Ct. 276, 34 L. Ed. 873; the statute relied upon authorized a suit in equity by one out of possession against one in possession. As an action at law in the nature of ejectment afforded an adequate legal remedy, the bill to quiet title was dismissed."

Citing the Pusey Case, supra, with approval, Mr. Chief Justice Hughes, in Henrietta Mills v. Rutherford County, North Carolina, et al., 281 U. S. 121, 127–128, 50 S. Ct. 270, 272, 74 L. Ed. 737, said: "It is true that, where a state statute creates a new equitable right of a substantive character, which can be enforced by proceedings in conformity with the pleadings and practice appropriate to a court of equity, such enforcement may be had in a Federal court, provided a ground exists for invoking the federal jurisdiction. * * * Whatever uncertainty may have arisen because of expressions which did not fully accord with the rule as thus stated, the distinction, with respect to the effect of state legislation, has come to be clearly established between substantive and remedial rights. A state statute of a mere remedial character, such as that which the petitioner invokes, cannot enlarge the right to proceed in a federal court sitting in equity, and the federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have had in a state court. Pusey & Jones v. Hanssen, supra."

In Matthews et al. v. Rodgers et al., 284 U. S. 521, 529, 52 S. Ct. 217, 221, 76 L. Ed. 447, decided on February 15, 1932, the Supreme Court said: "While local statutes may create new rights, for the protection of which recourse may be had to the remedies afforded by federal courts of equity if the remedy at law is inadequate and the other jurisdictional requirements are present, state legislation

cannot enlarge their jurisdiction by the creation of new equitable remedies, nor can it avoid or dispense with the prohibition against the maintenance of any suit in equity in the federal courts, where the legal remedy is adequate. Henrietta Mills v. Rutherford County, supra, 281 U. S. 127, 128, 50 S. Ct. 270, 74 L. Ed. 737; Pusey & Jones Co. v. Haussen, 261 U. S. 491, 500, 43 S. Ct. 454, 67 L. Ed. 763."

See, also, Road Improvement Dist. No. 7 of Poinsett County, Ark., Guardian Savings & Trust Co. (C. C. A. 8) 298 F. 272, 274; Grover v. Merritt Development Co. (D. C.) 7 F.(2d) 917, 920; McLaughlin v. Western Union Telegraph Co. (D. C.) 7 F.(2d) 177, 183; Adams v. Jones (C. C. A. 5) 11 F.(2d) 759, 760; Denison et al. v. Keck et al. (C. C. A. 8) 13 F.(2d) 384, 387; F. W. Woolworth Co. v. Davis (C. C. A. 10) 41 F.(2d) 342, 346.

Some of the foregoing cases involved litigation in which there was a plain, adequate, and complete remedy at law. This furnished an additional reason for the court's disinclination to permit a state statute to enlarge the jurisdiction of a federal tribunal sitting in equity.

Having found that a federal court will not enforce a state statute of a purely remedial nature, when the enforcement involves an enlargement of such court's established equity powers, we next advance to the consideration of whether or not an arbitration act such as we have here to consider provides a new substantive right or merely a new remedy.

In Red Cross Line v. Atlantic Fruit Company, 264 U. S. 109, 124, 44 S. Ct. 274, 277, 68 L. Ed. 582, the Supreme Court said: "This state statute is wholly unlike those which have recently been held invalid by this court. The Arbitration Law deals merely with the remedy in the state courts in respect of obligations voluntarily and lawfully incurred. It does not attempt either to modify the substantive maritime law or to deal with the remedy in courts of admiralty."

While on the state appellate bench of New York, Mr. Justice Cardozo, now of the Supreme Court of the United States, in at least two decisions had occasion to consider the arbitration statute of New York, similar to the statute of California. In each of those two decisions Mr. Justice Cardozo emphasized that an arbitration statute is a remedial law, and not one creating a substantive right. In Berkovitz et al. v. Arbib & Houlberg, 230 N. Y. 261, 130 N. E. 288, 289–290, he said:

"The common-law limitation upon the enforcement of promises to arbitrate is part of the law of remedies. [Cases cited.] The rule to be applied is the rule of the forum. Both in this court and elsewhere, the law has been so declared. Arbitration is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow. This statute did not attach a new obligation to sales already made. It vindicated by a new method the obligation then existing. * * *

"A promise that differences will be arbitrated is not illegal and a nullity without reference to the law in force when differences arise. Since it is directed solely to the remedy, its validity is to be measured by the public policy prevailing when a remedy is sought. * * *

"All that the statute has done is to make two remedies available when formerly there was one."

Again, in Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284, 169 N. E. 386, 388–389, Mr. Justice Cardozo said:

"An order for the specific performance of an agreement to arbitrate a controversy is one that finally determines a special proceeding. * * *

"The contract was to be performed in Massachusetts to the extent that the things to be sold were to be there manufactured and delivered. The conclusion does not follow of necessity that the remedy prescribed for the settlement of differences was to be sought in the same forum. At common law, general contracts of arbitration, though not specifically enforceable, were not held to be illegal. This is seen from the fact that, in case they were broken, there might be a recovery of damages. [Cases cited.] The statute of New York does not bring the contract into being, but adds a new implement, the remedy of specific performance, for its more effectual enforcement. This remedy * * *" etc.

In Meacham v. Jamestown, F. & C. R. Co., 211 N. Y. 346, 105 N. E. 653, 655, Ann. Cas. 1915C, 851, Mr. Justice Cardozo addressed his attention to the arbitration contract rather than to a statute. In his concurring opinion he said:

"An agreement that all differences arising under a contract shall be submitted to arbitration relates to the law of remedies, and the law that governs remedies is the law of the forum. * * *

"Such a contract, whatever form it may assume, affects in its operation the remedy alone."

See, also, Webster v. Van Allen et al., 217 App. Div. 219, 216 N. Y. S. 552, 551, and S. A. Wenger & Co., Inc., v. Propper Silk Hosiery Mills, Inc., 239 N. Y. 199, 146 N. E. 203, 204.

Federal Circuit Courts of Appeals and Federal District Courts in numerous jurisdictions have laid down or approved the same doctrine.

In Pacific Indemnity Co. v. Insurance Co. of North America, 25 F.(2d) 930, 932, in which the identical California statute here involved was under consideration, the late Judge Rudkin, of this court, quoted from the Berkovitz Case, supra, in part as follows: "Applied to the case of Berkovitz & Spiegel, these principles and presumptions require that arbitration be enforced. The statute was enacted after the contract had been made, but before a remedy was invoked. The range of choice is governed by the remedies available at the time when choice is made." Judge Rudkin also quoted a part of the decision already transcribed herein, supra.

In Atlantic Fruit Co. v. Red Cross Line (C. C. A. 2) 5 F.(2d) 218, 219, the court said: "There are instances in which new substantive legal rights created by the states may be enforced by remedies of its own in the admiralty, but it is entirely plain that this matter of arbitration, whether based on a New York statute or resting upon traditional and judge-made law, is wholly matter of remedy."

Again, in Lappe v. Wilcox (D. C.) 14 F.(2d) 861, 864, we find the following language: "It is clear that this arbitration statute relates to the remedy, and not to substantive rights. [Berkovitz Case cited.]"

See, also, The Silverbrook (D. C.) 18 F.(2d) 144, 145; Aktieselskabet Korn-Og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten (D. C.) 232 F. 403, 405, affirmed in The Atlanten, 252 U. S. 313, 40 S. Ct. 332, 64 L. Ed. 586, in which the District Court observed, "Such clauses, if regarded as conditions precedent to any action, have, I believe, nearly always been held to touch the remedy, and not the right"; United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co., Ltd. (two cases) 222 F. 1006, 1011–1012 (D. C.).

The appellee relies strongly upon Pacific Indemnity Co. v. Insurance Co. of North America, supra, decided by this court. A study of that case, however, discloses that the question here involved was neither raised nor considered in that litigation.

. We therefore believe that the order and decree of the lower court, directing the parties to proceed to arbitration in accordance with the agreement, should be reversed.

Order reversed.