**GREAT FALLS RETAIL CLERKS UNION LOCAL NO. 57, chartered by Retail Clerks International Association, AFL–CIO, Plaintiff,**

v.

**WESTERN DRUG OF GREAT FALLS, Defendant.**

**Civ. No. 75–55–GF.**

United States District Court, D. Montana, Great Falls Division.

March 23, 1976.

D. Patrick McKittrick, McKittrick & Duffy, Great Falls, Mont., for plaintiff.

Leslie S. Waite, III, Burton & Coder, Great Falls, Mont., for defendant.

OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Plaintiff and defendant are parties to a collective bargaining agreement which contains an arbitration clause.

Defendant discharged one Rosemary Cagle. It is alleged in the complaint that "a dispute arose concerning the discharge of employee Rosemary Cagle and the contractual rights and obligations centering same. That thereafter pursuant to the arbitration clause of the Collective Bargaining Contract the matter was submitted to arbitration . . . ." This portion of the complaint was admitted by the answer. The award of the

arbitrator contains, among other things, the following:

FINDINGS OF FACT:

\* \* \* \* \* \*

On April 4, 1975, Ms. Cagle and employee Ada Kanning were engaged in a heated argument and were discharged by the Store Manager Mr. Filicetti. Mr. Filicetti stated that: He fired Ms. Cagle and Ms. Kanning "for the same reason".

CONCLUSIONS:

\* \* \* \* \* \*

It would appear that management had reason to be somewhat dissatisfied with Ms. Cagle's work habits. Ms. Cagle's persistent complaints about Saturday days off, were not based upon any contractural (sic) agreement which would have provided the Saturdays off which she desired.

It is further evident that her participation in a heated argument with a fellow employee (Ada Kanning) during working hours, would justify disciplinary action by the employer.

Mr. Filicetti's answer to the question "Did you discharge Ms. Cagle and Ms. Kanning for the same reason?" was: "yes".

The facts indicate that: Discharge in this case was to (sic) severe. Discipline in Ms. Cagles case should have been applied to the same degree as the discipline of Ms. Kanning.

AWARD:

That Ms. Cagle be rehired to her previous job held at the time of discharge. That, Ms. Cagle be compensated for time lost. That this compensation is to be reduced by an amount equal to two (2) weeks pay. That all rights and benefits be restored back to her original date of employment.

While the management apparently was dissatisfied with Ms. Cagle's performance, it is evident from the award that the arbitrator found that the discharge was not on the ground of incompetence but was because Ms. Cagle had engaged in a heated argument with Ms. Kanning, another employee.

The defendant refused to comply with the award, asserting, as it does here, that the award is not based upon an interpretation of any clause or portion of the collective bargaining agreement.

■ There is no question that a discharge for any reason other than incompetence is arbitrable and that the arbitrator has the duty to weigh the employee's conduct and determine whether it amounts to a justifiable cause for discharge.

The arbitrator, by finding that the "[d]ischarge in this case was to (sic) severe," did, in my opinion, determine that the discharge was not justifiable. What the arbitrator did was to decide that, while there was cause to discipline, there was not justifiable cause to discharge. A similar finding was approved in *International Association of Machinists v. Campbell Soup Co.*, 406 F.2d 1223 (7th Cir. 1969). See the opinion in *International Union of District 50, United Mine Workers v. Bowman Transportation, Inc.*, 421 F.2d 934 (5th Cir. 1970), wherein it was said, at 936, "[d]ischarge is often referred to as industry's capital punishment and in the absence of a restriction clause expressly limiting the function and power of the arbitrator, it is within the arbitrator's power to modify this ultimate sanction."

■ This, then, is the question: Having found a violation of the contract, did the arbitrator have power to fashion a remedy, and was the remedy fashioned appropriate? The contract does not expressly grant to the arbitrator power to fix remedies in those instances where violations of the contract are found. It does provide that "The arbitrator shall have no power to change this agreement in any way; he shall be limited to the application and terms of the agreement."

The parties here were seeking by collective bargaining to achieve industrial peace by providing some method short of strikes and lockouts of resolving disputes. A collective bargaining agree-

ment which does no more than to provide the parties with some equivalent of an unenforceable declaratory judgment does not, of course, resolve disputes. If the arbitration provided by the contract does not provide the employee, acting alone or through his union, with a remedy for breach of the collective bargaining agreement, then where, as here, there is an absolute no-strike clause, the employee has given up his traditional remedy and has received no remedy in exchange. *See United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). It seems to me to be most unlikely that this is the result the parties intended to achieve. I think that what Judge Doyle, dissenting in the case of *Retail Store Employees Union v. Sav-On Groceries,* 508 F.2d 500, 503–04 (10th Cir. 1975), said with respect to the interpretation of a submission may well be said as to the interpretation of the collective bargaining agreement itself:

> I must dissent, first, because it appears to me highly unreasonable to rule that the submission was technically inadequate or insufficient when the entire purpose of the submission was not only to determine the rightness or wrongness of the problem, but to achieve a monetary result. After all, they were not seeking a declaratory judgment. Each of these arbitrations is significant in terms of monetary benefit.

In light of the purpose of the collective bargaining agreement and the rules established in the *Steelworkers* trilogy,[1] I do not believe that the arbitrator who interprets the collective bargaining agreement as giving power to fashion a remedy should be held to have gone out of the agreement in the absence of some language in the collective bargaining agreement which can be said to foreclose such a power.

I do not think the decisions in *Retail Store Employees Union v. Sav-On Groceries, supra; Truck Drivers & Helpers Union v. Ulry-Talbert Co.,* 330 F.2d 562 (8th Cir. 1964); and *Communications Workers of America v. Western Electric Co.,* 397 F.Supp. 1318 (N.D.Ga.1975) are *contra.* In *Truck Drivers & Helpers Union v. Ulry-Talbert Co., supra,* an employer was given a right to discharge for dishonesty. The discharged employee was found to have been dishonest, but nonetheless the arbitrator decided the penalty of discharge was too severe and awarded a reinstatement. The employer's contract right to discharge for dishonesty was obviously diminished by the arbitrator. Here the right to discharge was for "justifiable cause" and the question of justifiable cause was specifically made subject to arbitration.

In *Communications Workers of America v. Western Electric Co., supra,* the agreement provided that an employee charged with a crime might be suspended until the disposition of the criminal charges. An employee was suspended and later the criminal charges were dismissed. The issue of back wages went to arbitration and an arbitrator awarded back pay on the general theory that, of the two innocent parties, there were reasons why the employer should pay. The arbitrator required a payment not provided for by the contract absent a breach of contract by the employer. Here, of course, the arbitrator did find, as he was empowered to do, a breach of contract. In *Retail Store Employees v. Sav-On Groceries, supra,* the majority simply held that the back-pay issue had not been submitted for arbitration. The result reached here does find support in *International Union of District 50, United Mine Workers v. Bowman Transportation, Inc., supra.*

The award is held valid and binding on both parties insofar as it finds that the

---

1. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343; 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

discharge was unjustifiable and insofar as it awards reinstatement and back pay.

The award did not specify the amount by which Ms. Cagle should be compensated for "time lost," and I am unable to determine the meaning of the quoted phrase. Did the arbitrator mean the amount of lost wages which would have been paid by defendant (less two weeks) in the absence of the discharge, or did he mean that amount less the amount that plaintiff had earned from other sources in the interim?

In accordance with the technique used in *Enterprise Wheel & Car Corp. v. United Steelworkers of America*, 269 F.2d 327 (4th Cir. 1959), approved in *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra*, note 1.

■ IT IS ORDERED that the parties take steps to complete the arbitration before the same arbitrator, if available, so that the award will contain a complete adjudication of the matters in dispute.[2]

The plaintiff will prepare a judgment in accordance with Rule 14 of the Rules of this court.

---

**2.** I cannot control the action of the arbitrator, but I think it not amiss to suggest that a dollar-and-cents award based on the arbitrator's findings and conclusions would probably assist in the final termination of this dispute.