Michael E. WREN, William R. Kajin, James N. Curl, and Carrold L. Gordon, on behalf of themselves and other employees of Sletten Construction Co. similarly situated, Plaintiffs-Appellees,

v.

SLETTEN CONSTRUCTION COMPANY, Defendant-Appellant.

No. 77–2092.

United States Court of Appeals, Ninth Circuit.

Feb. 5, 1981.

As Amended on Denial of Rehearing April 13, 1981.

As Amended Aug. 5, 1981.

Urban L. Roth, Poore, Roth, Robischon & Robinson, P. C., Butte, Mont., for defendant-appellant.

McKittrick & Duffy, Joseph W. Duffy, Great Falls, Mont., for plaintiffs-appellees.

Before WALLACE and ANDERSON, Circuit Judges, and MURRAY,* District Judge.

PER CURIAM:

The complaint in this case involves the effort of the plaintiffs, former employees of appellant Sletten Construction Company (Sletten) on certain construction projects, to recover unpaid wages, overtime compensation and other monies from Sletten under the provisions of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 216(b)] (FLSA), and the Montana Wage Claim Act (Title 41 of the Revised Codes of Montana,

---

* The Honorable Frank J. Murray, Senior United States District Judge for the District of Massa-chusetts, sitting by designation.

Chapters 13 and 23). Each plaintiff was a member of International Union of Operating Engineers, Local 400 (the Union), a labor organization that was party to collective bargaining agreements with Sletten. This action was brought in the Montana state court and was removed by Sletten to the federal district court.

The district court characterized this action as a continuance of a previous controversy and we briefly refer to that dispute. On the previous occasion, at a time when Sletten and the Union were involved in contract undertakings of certain construction projects, a dispute arose between them as to which of two collective bargaining agreements applied to the projects. Sletten requested the Union to submit the dispute to arbitration, but the Union declined. Sletten petitioned the United States District Court to compel arbitration of the issue, and the court entered a judgment "directing the [Union] to submit the disputes arising under the collective bargaining agreements to arbitration". *Sletten Construction Co. v. International Union of Operating Engineers, Local 400*, 383 F.Supp. 853, 855 (D.Mont.1974). Thereupon, the parties submitted the dispute to Garth Magnum as arbitrator, who rendered an award that

> The Company is found to be in violation for having applied the heavy and highway agreement to work which was more properly, according to area practice in interpretation of the two agreements, within the scope of the building agreement.

In his opinion the arbitrator stated, in part, that

> To conclude that the building agreement should have been applied from the beginning of the three projects leaves unresolved the question of remedy. Neither the pay issue nor the issue of appropriate remedy was submitted to the arbitrator.... The arbitrator cannot decide on a binding basis what was not submitted

for decision. Nevertheless some suggestion of appropriate remedy seems necessary.

\* \* \* \* \* \*

> [I]t is the arbitrator's decision that the building agreement should apply to any uncompleted work on these contracts, but his opinion that no retroactive change of pay should result.

The Union did not challenge the award.

This action was brought following publication of the award rendered by Garth Magnum. The arbitrator's determination that the "building agreement" applied to the construction projects in question sustained the contention of the Union. The plaintiffs in this action, members of the Union, were employed by Sletten on construction projects involved in the arbitration. The Union is not a party to these proceedings. Although the complaint in this case is silent as to the previous arbitration and award, plaintiffs in their brief make clear that they seek to recover in this action on the rates of pay, including the overtime rates, under the "building agreement", and retroactive payments based on these rates. Plaintiffs maintain that the award "establishes the rate of pay these Plaintiffs are allowed to claim". Brief for Plaintiffs at 8.

When the case was removed to the district court Sletten moved for dismissal of the complaint on the ground, *inter alia*, that plaintiffs had failed to exhaust their contractual grievance and arbitration remedies. Subsequently, Sletten filed a motion for summary judgment. The district court denied the motion to dismiss and took no action on the motion for summary judgment. Although neither plaintiffs nor Sletten requested the district court to submit the case to further arbitration, the court *sua sponte* ordered Sletten to request arbitration, and stayed further proceedings in the case pending arbitration. Sletten has appealed from these orders.[1]

---

1. The orders of the district court read:

 IT IS ORDERED that the defendant submit to the International Union of Operating

 Engineers, Local 400, a request to arbitrate the question of the retroactive effect of the award rendered by Garth L. Magnum. The

Appellant contends that the order to it to request arbitration is appealable as a "final decision" under 28 U.S.C. § 1291, and that the stay order is appealable under section 1292(a)(1) as an interlocutory order granting an injunction. The order here was entered in proceedings still pending before the district court as a continuing action and thus is not a final decision. *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 179, 75 S.Ct. 249, 251, 99 L.Ed. 233 (1955). *See Clark v. Kraftco Corp.,* 447 F.2d 933, 935 (2d Cir. 1971). Plaintiffs did not bring this action to compel arbitration, *compare Goodall-Sanford, Inc. v. United Textile Workers of America,* 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957), and arbitration such as the district court ordered here cannot proceed to a final and enforceable result without further judicial action. *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 86 (2d Cir. 1961), *cert. denied, sub nom. Dawson v. Lummus Co.,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). It is true that the arbitration order here was unusual in that the district court *sua sponte* directed only Sletten to submit the request for arbitration, and made clear that the order was designed to preclude Sletten from raising in the arbitration proceedings an appropriate defense available under the collective bargaining agreement against plaintiffs' claims. The effect of the order was to confront Sletten with the dilemma whether to suffer the potential loss of a claim of right to raise the defense in the arbitration

proceedings or to refuse to comply with the court's order. While the arbitration order has unusual coercive and prophetic aspects, we do not view the potential loss of the right to raise the defense as having the effect of disposing of important rights of appellant which may be lost irreparably if appellate consideration is delayed for a decision on the whole case. *But cf. Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *Theriault v. United States,* 503 F.2d 390 (9th Cir. 1974). The adverse consequences to appellant of complying with an erroneous arbitration order, pending a decision on the issues raised in the complaint and answer, would seem to be the expense and frustration of involvement in proceedings which may ultimately result in an unenforceable arbitration award. Although it would be an unfortunate excursion, it would not be sufficiently serious to require us to deviate from the rule of finality. We conclude the order is not appealable under section 1291.

Appellate jurisdiction exists if the order staying the proceedings can be deemed an injunction appealable under 28 U.S.C. § 1292(a)(1), which allows appeals from "[i]nterlocutory orders ... granting, continuing, modifying, refusing or dissolving injunctions ...". An order of a district court staying its own proceedings in an action brought to establish basically legal claims pending arbitration has been held appealable under that statute. *Leyva v.*

request shall indicate to the arbitrator chosen that he should first determine whether, under the Building Contract, he has power to fashion a remedy. If he so finds, he shall fashion it. If the arbitrator finds that there is *no power to fashion a remedy, then* that finding shall be reported to the court. If Local 400 refuses to submit the dispute, the fact shall be reported to the court. The parties are not required to submit the dispute to Garth L. Magnum. They did not voluntarily submit the matter of remedy to him, and while I think that it is preferable that one arbitrator should resolve the whole problem, I do not believe that I have the power to choose an arbitrator for the parties.[9]

Pending the results of arbitration, further proceedings are stayed.

Footnote 9 reads:

The order is made in this fashion for two reasons: First, it may be that an arbitrator will find that, under the contract, there is no power to fashion a remedy. If so, then obviously the collective bargaining agreement does not foreclose litigation. Second, the defendant, in its affirmative defense, invited this approach, and I have adopted it because it is possible that the plaintiffs' rights under the collective bargaining agreement have been waived by lapse of time. If the defendant request[s] the arbitration, which as I have indicated they [sic] have suggested, they [sic] will be estopped from claiming any such waiver.

*Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); *Beckley v. Teyssier*, 332 F.2d 495 (9th Cir. 1964). Appealability of the stay order under section 1292(a)(1) entered in such an action is sanctioned under what is known as the Enelow-Ettelson rule.[2] The stay of the action pending arbitration is "regarded as an injunction if it can be analogized to an equitable restraint of legal proceedings", *Alexander v. Pacific Maritime Ass'n*, 332 F.2d 266, 267 (9th Cir.), *cert. denied*, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964), or when invocation of the arbitration agreement raises an equitable defense. *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935). There can be no doubt that the action brought by the plaintiffs for damages for breach of contract and violations of FLSA and the Montana Wage Claims Act appertains to distinctively legal claims as distinguished from the enforcement of equitable principles. *See Bear v. Hayden, Stone, Inc.*, 526 F.2d 734 (9th Cir. 1975); *Brannon v. Warn Bros., Inc.*, 508 F.2d 115 (9th Cir. 1974) (contract cases); *Beckley v. Teyssier, supra* (FLSA). Thus, we find jurisdiction under 28 U.S.C. § 1292(a)(1).

## I

We see no need to discuss in great detail appellant's argument that the arbitrator had already decided against the plaintiffs the claims they present in this case for retroactive wage payments. The arbitrator spoke on that issue precisely, asserting that "[n]either the pay issue nor the issue of appropriate remedy was submitted" to him. Further, he carefully avoided making a "decision" on the pay issue.[3]

The question is not, as appellant contends, whether formulation of a remedy on the pay issue was within contemplation of the question submitted: which of the two collective bargaining agreements applied. Rather, the only question is whether the arbitrator had authority to decide issues which were not submitted by the parties. Appellant has not shown that the pay issue or the issue of appropriate remedy was specifically submitted to the arbitrator by agreement of the parties. On the other hand, where the Union refused to submit to arbitration until compelled to do so by the district court order, the Union could well have been reluctant to agree to a submission other than the sole question of which contract was applicable. No adequate reasons have been advanced to convince us that we should not accept the arbitrator's explicit assertion that the issues were not submitted to him.

■ Obviously, the arbitrator did not have authority to bind the parties by deciding issues not submitted by the parties, *Retail Store Employees Local 782 v. Sav-On Groceries*, 508 F.2d 500 (10th Cir. 1975); *Kansas City Luggage & Novelty Workers Local 66 v. Neevel Luggage Mfg. Co.*, 325 F.2d 992 (8th Cir. 1964); *Textile Workers Local 1386 v. American Thread Co.*, 291 F.2d 894 (4th Cir. 1961), and the arbitrator clearly recognized that he did not. Accordingly, we reject appellant's argument.

## II

Appellant contends that plaintiffs are precluded from bringing this action for failure to exhaust contractual remedies, and

---

2. *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). Under the rule of these cases, known as the "Enelow-Ettelson" rule, an order that stays federal court proceedings pending determination of an equitable defense is an injunction appealable under 28 U.S.C. § 1292(a)(1) if the proceeding stayed was an action that could have been maintained as an action at law before the merger of law and equity.

3. The arbitrator distinguished between his "decision" and his "suggestion" or "opinion" in this language:

 Therefore it is the arbitrator's *decision* that the building agreement should apply to any uncompleted work on these contracts, but his *opinion* that no retroactive change of pay should result. (Italics added.)

that the district court erred in denying its motion to dismiss and in ordering it to submit a request to the Union to arbitrate.

a. Exhaustion of Contractual Remedies

Article VIII of the "building agreement" provides a method of grievance procedure chosen by the Union and Sletten themselves for the settlement of labor disputes through mutual discussion, negotiation and arbitration. These provisions apply to "[a]ny controversy arising over the terms of this contract on the job ...".[4] It is thus clear that in bringing this action to recover wage payments provided in the "building agreement", plaintiffs have side-stepped the grievance and arbitration procedures of that agreement.

The requirement that beneficiaries of a collective bargaining agreement must exhaust available mandatory grievance and arbitration procedures before recourse to judicial remedies was announced in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). In *Maddox*, the plaintiff brought suit against his employer in an Alabama state court to recover severance pay allegedly due pursuant to the terms of collective bargaining agreement. The Supreme Court first concluded that the contract sued on was subject to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and that the suit was therefore governed by federal law. Noting that the suit was based on the contract, and that therefore "the remedy sought ... did not differ from any that the grievance procedure had power to provide", 379 U.S. at 657, 85 S.Ct. at 618, the Court determined that the federal policy favoring arbitration required that parties be precluded from side-stepping the contractual grievance process. The Court thus held:

4. Article VIII of the building agreement follows:

ARTICLE VIII
ARBITRATION

1. Any controversy arising over the terms of this contract on the job may be settled by negotiation between the employee or employees involved and their Employers, consistent with the provisions of this Agreement, provided, however, said Employer shall notify an authorized representative of the Local Union and permit him to be present during such negotiation, provided, however, that any major controversy arising on the job shall be settled by the Union Representative and the Employer.

2. If the parties fail in step 1, the matter shall be referred to a board of six (6), composed of three (3) members of Local 400 or appointed by Local 400 and three (3) members from Great Falls Construction Council or three (3) members designated by the Employer, hereafter referred to as the Grievance Board. All grievances referred to this body shall be in writing. If the dispute involves a member of the board, his alternate shall serve. The board shall act only when there are six (6) members present and they shall act within five (5) days of the submission of any matter in dispute. The grievance shall be settled by majority vote of the Board and failure to reach a majority vote shall require action under step three as outlined below.

3. An impartial seventh (7th) member shall be chosen from a list of five (5) names submitted by the Federal Mediation and Conciliation Service. Within three (3) days after submission of this list the Union and Employer will each eliminate two (2) names. The first opportunity to delete from such list shall be decided by lot. The grievance will then be decided by the impartial arbitrator within ten (10) days. Each party shall pay their own expenses with respect to the arbitration with the one exception, that the expenses, if any, of the seventh (7th) impartial member of the board shall be paid by the employer. All decisions of the arbitrator shall be final and binding upon the employer and the Union.

4. Pending the settlement of a controversy or dispute as provided in this Article and while the grievance procedure for which provision is here made is invoked, there shall be no strike, lockout, slowdown, or other interference with the work of the Employer affected or of any other Employer bound by these articles. Conversely, neither the Employer involved nor any other Employer bound hereby shall take any action to prejudice the employee or employees or Union involved, or to hinder or delay a prompt and effective decision as in this Article stipulated.

5. It is understood that arbitration will be obtained and final decision rendered in not more than an aggregate of eighteen (18) calendar days from the time the grievance is first presented. If either party signatory to the above grievance and arbitration clauses, do [sic] not comply with the above steps, procedures and time limits, the other party then shall have full recourse for any and all economic actions at their [sic] disposal. If economic action is not taken within fifteen (15) days the grievance shall be waived.

As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress.

*Id.* at 652, 85 S.Ct. at 616 (italics in original). Although subsequent Supreme Court cases recognize exceptions to the exhaustion requirement, they also confirm the validity of the general rule. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *U. S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 357, 91 S.Ct. 409, 412, 27 L.Ed.2d 456 (1971); *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 329, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967).

In *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court held that employees need not exhaust grievance procedures established by collective bargaining agreements when seeking to vindicate rights created by the FLSA. The Court reasoned that the minimum pay and maximum hour provisions of the FLSA are substantive rights that devolve on workers individually, not collectively, and may not be waived under collective bargaining agreements. *Id.* at 738–746, 101 S.Ct. at 1443–1447.

■ In the case before us, plaintiffs concede that their contractual wage and overtime pay rates exceed the minimum standards established by the Fair Labor Standards Act. 29 U.S.C. §§ 206, 207(a)(1). Plaintiffs rely not on the Act's substantive provisions, but on a provision stating that the statute's minimum standards will not "justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter . . .". 29 U.S.C. § 218(a). We think that plaintiffs' contentions and arguments based on 29 U.S.C. § 218(a) are utterly insubstantial, because that section provides no basis for a claim of rights or duties such as plaintiffs seek to enforce in this action. *See Powell v. United States Cartridge Co.*, 339 U.S. 497, 518, 70 S.Ct. 755, 766, 94 L.Ed. 1017 (1950); *Walling v. A. H. Belo Corp.*, 316 U.S. 624, 630 n.6, 62 S.Ct. 1223, 1226 n.6, 86 L.Ed. 1716 (dictum), *rehearing denied*, 317 U.S. 706, 63 S.Ct. 76, 87 L.Ed. 563 (1942); *Missel v. Overnight Motor Transp. Co.*, 126 F.2d 98, 107 (4th Cir.), *aff'd*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, *rehearing denied*, 317 U.S. 706, 63 S.Ct. 76, 87 L.Ed. 563 (1942); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir. 1960); *White v. Witwer Grocer Co.*, 132 F.2d 108, 111 (8th Cir. 1942).

■ In *Barrentine*, the Court observed that "courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective bargaining agreement. . . ." 450 U.S. at 737, 101 S.Ct. at 1443. Where the employee's claim is essentially on the contract, as here, there is no reason to vary from the traditional exhaustion requirement.[5]

The gist of plaintiffs' claim under the Montana Wage Claim Act is that Sletten failed to pay the proper amount of wages due the employees at least twice monthly. In substantial part this claim rests on a determination of what the proper wage rate should be. While this determination may depend on the provisions of the "building agreement", the claim does not involve an action for breach of a collective bargaining agreement under the Labor Management Relations Act. 29 U.S.C. § 185. Federal jurisdiction over the state claim exists, if at

5. Because the plaintiffs' claim is essentially on the contract, this case is also distinguishable from *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). There we held that a defendant was not entitled to obtain a stay of that portion of an action based on a Fair Labor Standards Act claim pending arbitration, *see* 9 U.S.C. § 3, because the arbitration clause of the contract was limited to disputes over the intended meaning of the contract. *See also Iowa Beef Packers, Inc. v. Thompson*, 405 U.S. 228, 92 S.Ct. 859, 31 L.Ed.2d 165 (1972). Here there is no question that the dispute is essentially contractual and therefore arbitrable.

all, solely because of pendent jurisdiction to plaintiffs' assertion that the Fair Labor Standards Act was violated. *See Klaus v. Hi-Shear Corp.*, 528 F.2d 225, 231 (9th Cir. 1975).[6]

 The doctrine of pendent jurisdiction is one of discretion, not of power, as long as the federal claims are substantial enough to confer subject-matter jurisdiction on the federal court. *Rosado v. Wyman*, 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *Mendoza v. K-Mart, Inc.*, 587 F.2d 1052, 1056–57 (10th Cir. 1978); *Arizona v. Cook Paint & Varnish Co.*, 541 F.2d 226, 227 (9th Cir. 1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977). When the state issues apparently predominate and all federal claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state claim. *See Hodge v. Mountain States Tel. & Tel. Co.*, 555 F.2d 254, 261 (9th Cir. 1977); *Toensing v. Brown*, 528 F.2d 69, 72 (9th Cir. 1975). "[T]he issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation". *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). We do not find the argument for retention of the state claims under the circumstances persuasive. Although the district court has familiarity with the case, the issues arising under state law have not been briefed, nor have they been illuminated in the oral arguments of the parties in the federal court.

### b. The Order to Seek Arbitration

It is clear that plaintiffs by their complaint did not seek an order to compel Sletten to submit any dispute between them to arbitration. They urge in their brief filed in this court that resolution of their claims

by arbitration would probably not be satisfactory, and they express doubt that their rights would be protected by the arbitration process.

It is equally clear that Sletten sought no relief from the district court by any pleading or motion to compel plaintiffs to submit their claims to arbitration. Although plaintiffs cite alleged requests by Sletten to the district court for arbitration of plaintiffs' claims, we find the discussions in the cited instances are entirely consistent with Sletten's contention that the complaint should be dismissed. Having first contended that the back pay issue had been submitted to and decided by the arbitrator, Sletten argued alternatively that the district judge should find that the issue had been properly submitted to the arbitrator, but that he had not clearly decided it. Sletten contended that the proper remedy would be for the court to order the parties to return to the arbitrator to complete the process and obtain clarification of the award.[7] As we have affirmed the district court's finding that the back pay issue was never submitted to the arbitrator, the district judge's order can hardly be sustained as based on the finding and order requested by Sletten.

Despite this alternative request that the parties be ordered to complete the prior arbitration, Sletten did not retreat from its defense that plaintiffs' failure to attempt use of the arbitration process to adjust the labor dispute is a bar to this action invoking immediate judicial relief. It is clear that Sletten never suggested to the district court that it (Sletten) could properly be ordered to submit a request to the Union to arbitrate the pay issue for the first time.

 We thus turn to the question whether the district court had power to

---

6. We offer no opinion on the applicability of our decision on the outcome of the Montana Wage Claim Act claim in the Montana state court. We observe that our holding on the necessity of exhaustion of contractual remedies as a prerequisite to judicial relief is based on federal labor law, and is not meant to affect any remedies that might be available under state law. Whether our decision has any effect on the state law claim is a matter for the state court to decide.

7. Plaintiffs relied on enforcement cases in which courts have ordered the parties to return to the arbitrator for clarification of the award. *E. g., Enterprise Wheel and Car Corp. v. United Steelworkers*, 269 F.2d 327 (4th Cir. 1959). We offer no opinion on whether such a judicial technique is available when the proceeding is not one to enforce an arbitration award.

order arbitration where neither plaintiffs nor Sletten requested it. When plaintiffs fail to exhaust contractual remedies, the ordinary procedure is to dismiss the complaint. *See, e. g., Hines v. Anchor Motor Freight, Inc., supra,* 424 U.S. at 563, 96 S.Ct. at 1055; *Beriault v. Local 40, Super Cargoes & Checkers,* 501 F.2d 258, 262–63 (9th Cir. 1974). We are not persuaded that the district judge was justified in departing from this procedure by denying the motion to dismiss and ordering Sletten to seek arbitration. Consideration of certain well-settled principles seems to support the view that the order is inconsistent with the contractual nature of arbitration. A party may not be ordered to arbitrate an issue he has not agreed to arbitrate, because no duty to arbitrate arises by operation of law. *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Although a strong congressional policy exists that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes . . .", 29 U.S.C. § 173(d), the right to arbitration may be waived or modified by the parties, and it is a general principle that courts do not enforce private agreements, even labor agreements, which they are not requested to enforce. *See Republic Steel Corp. v. United Mine Workers,* 428 F.Supp. 637, 643 (W.D. Pa.1977), *aff'd,* 570 F.2d 467 (3rd Cir. 1978); *Tolbert v. Union Carbide Corp.,* 495 F.2d 719, 721 n.2 (4th Cir. 1974).

We consider that the purpose of the district court order was to foreclose Sletten from raising the defense that the passage of time precluded the Union from pressing the back pay issue. Whether or not a claim is barred by time limitations is not for the court to decide; it must be submitted to the arbitrator. *Operating Engineers, Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 491–92, 92 S.Ct. 1710, 1712–13, 32 L.Ed.2d 248 (1972); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555–59, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964);

*Auto, Marine & Specialty Painters Local 1176 v. Bay Area Sealers, Inc.,* 577 F.2d 609, 610 (9th Cir. 1978); *Bealmer v. Texaco, Inc.,* 427 F.2d 885, 886–87 (9th Cir.), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970). A collective bargaining agreement may impose upon parties to it the compulsory duty to submit designated disputes to arbitration, but, where the agreement does not require it, neither party may be compelled to submit to an order the effect of which is to deprive him of a defense under the bargaining agreement. We conclude that the order to Sletten to submit a request to the Union to arbitrate the question of retroactivity was beyond the power of the district court, and must be vacated.

Accordingly, we vacate the order of the district court to Sletten to submit a request to the Union to arbitrate the question of retroactivity of the arbitrator's award, we dismiss plaintiffs' claims under the Fair Labor Standards Act, and we remand the case to the district court with directions to remand the state claims to the District Court of Montana.

SO ORDERED.

FRANK J. MURRAY, Senior District Judge, concurring specially:

Although I concur in the result reached in the court's opinion, I cannot agree that the stay order of the district court had the prerequisites of the "granting" of an injunction, because that order was not sought by either party to these proceedings. But I agree that the district court order is indeed unusual, and I recognize that, as the Court remarked in *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 184, 75 S.Ct. 249, 254, 99 L.Ed. 233 (1955), the prerequisites to appealability in this area of the law are attended with "elements of fiction" and "incongruity".

WALLACE, Circuit Judge, concurring:

Our jurisdiction is clear pursuant to 28 U.S.C. § 1292(a)(1). While I would agree, if the question were necessarily before us, that there is no jurisdiction pursuant to 28 U.S.C. § 1291, I would not reach the issue.